THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID C. MARTIN, Defendant-Appellant.

Second District    No. 2—89—0095

Opinion filed February 13, 1991.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:

Defendant, David C. Martin, appeals a judgment of the circuit court denying his petition for *habeas corpus* in a proceeding to extradite him to Wisconsin. Defendant's sole argument on appeal is that fundamental fairness bars the State of Wisconsin from obtaining defendant's extradition six years after Wisconsin had instituted the first of three such pro-

ceedings. We disagree. We affirm the trial court.

On February 18, 1977, defendant escaped from a minimum security correctional facility in Oregon, Wisconsin, and fled shortly thereafter to Florida. Defendant lived in Florida, using the alias David Cleveland, until 1980 or 1981, when he moved to Rockford, Illinois, where his family lived. He lived in Rockford and was not physically outside of Illinois since that time.

In February 1982, defendant was arrested in Illinois on a burglary charge, and the Wisconsin prison from which defendant had escaped advised the sheriff's department that defendant was a fugitive and requested that authorities in Wisconsin be notified should defendant become available for extradition. Defendant pleaded guilty to the burglary charge in Illinois and was sentenced to four years' imprisonment beginning on July 26, 1982, and the fugitive information was dismissed. Defendant was released on parole after two years but was returned to prison for a parole violation.

In July 1986, defendant was again sentenced to three years' imprisonment in Illinois based on his guilty plea to a charge of retail theft. A fugitive information based on the Wisconsin escape was once again dismissed as part of a plea agreement. Defendant was paroled in July 1987 and was discharged from parole in July 1988.

In January 1988, the State of Illinois obtained leave to file a "fugitive information" against defendant, and the Governor of Wisconsin made a formal demand of the Governor of Illinois for the return of defendant. On February 22, 1988, a governor's warrant for defendant's arrest was issued.

In September 1988, after a series of continuances not in issue here, defendant filed a petition for *habeas corpus*. The petition alleged that the 1982 and 1986 dismissal of the fugitive warrants without request for or issuance of governor's warrants and the knowledge of Wisconsin officials of defendant's location throughout that time until 1988 contravened "fundamental fairness" and barred defendant's extradition to Wisconsin 14 years after the commission of the offense charged.

The circuit court conducted a hearing on defendant's petition, taking judicial notice of the prior fugitive proceedings against defendant and of the prior unrelated Illinois criminal proceedings involving defendant. Defendant argued that under *People ex rel. Bowman v. Woods* (1970), 46 Ill. 2d 572, "fundamental fairness" required the court to find that Wisconsin had forfeited its right to extradite defendant by its delay in seeking extradition from 1982 to 1988. The trial judge rejected this argument, concluding that *Bowman* involved extraordinary circumstances not present in this case. The trial judge noted specifically that in

the approximately six years between Wisconsin's first expression of interest in extraditing defendant and the issuance of the governor's warrant in the present case, defendant was sentenced to prison in Illinois on three separate occasions and stated that "of those six years, defendant has spent probably five in the Illinois State Penitentiary." The court denied the petition for *habeas corpus*, and defendant brought this appeal.

■ Extradition is a summary and mandatory proceeding for the apprehension and return of fugitives from justice. (*Michigan v. Doran* (1978), 439 U.S. 282, 288, 58 L. Ed. 2d 521, 527, 99 S. Ct. 530, 535; *People ex rel. Millet v. Babb* (1953), 1 Ill. 2d 191, 195.) Extradition is governed by article IV, section 2, of the United States Constitution and by Federal legislation (18 U.S.C.A. §3182 *et seq.* (Supp. III 1985)). State courts are bound by article IV, section 2, and it is settled that, although States may supplement Federal regulation, they may not impose more stringent requirements for extradition than those existing under Federal law. *Puerto Rico v. Branstad* (1987), 483 U.S. 219, 227, 97 L. Ed. 2d 187, 195, 107 S. Ct. 2802, 2808; *California v. Superior Court of California* (1987), 482 U.S. 400, 405-06, 96 L. Ed. 2d 332, 339, 107 S. Ct. 2433, 2437; *People ex rel. Hernandez v. Elrod* (1981), 86 Ill. 2d 453, 456.

■ Extradition of fugitives from justice is an absolute right of the demanding State. (*People v. Boswell* (1986), 148 Ill. App. 3d 915, 917.) The Supreme Court has held that in a *habeas corpus* proceeding to challenge extradition, the court of the asylum State may consider only (1) whether the extradition documents on their face are in order; (2) whether the petitioner has been charged with a crime in the demanding State; (3) whether the petitioner is the person named in the request for extradition; and (4) whether the petitioner is a fugitive. *California*, 482 U.S. at 408, 96 L. Ed. 2d at 341, 107 S. Ct. at 2438-39; *Doran*, 439 U.S. at 289, 58 L. Ed. 2d at 527, 99 S. Ct. at 535.

Defendant concedes that all four of these requirements have been met. He contends, however, that the Illinois Supreme Court in *People ex rel. Bowman v. Woods* (1970), 46 Ill. 2d 572, imposed a fifth requirement that was not met in this case, namely, that the demanding State not have forfeited its right to extradition by its "inordinate delay" in enforcing that right.

In *Bowman*, the petitioner was originally sentenced in 1951 to 10 years and 10 days' imprisonment in Alabama for the theft of 10 cows. After serving slightly more than a year of his sentence, he escaped from the Alabama prison and fled to Illinois. Alabama commenced extradition proceedings against him in 1955 and 1957, but each time Alabama took no conclusive action and the petitioner was eventually released. In May 1968, the petitioner was arrested pursuant to a governor's warrant, and

his petition for *habeas corpus* was denied. The Illinois Supreme Court reversed. It noted that the scope of a *habeas corpus* hearing is normally limited to the four issues we have listed, but stated that "because there was an inordinate delay not attributable to the petitioner, closer scrutiny is required." (46 Ill. 2d at 575.) The court then explained:

> "In this case there was an unexplained 13-year delay between the first extradition proceeding in 1955 and the last effort in 1968. During this period the State of Alabama knew of Bowman's presence in Illinois and twice refused to extradite him. As a consequence, because he has been unable to make bail, petitioner has been imprisoned in Illinois on three occasions pending disposition of the extradition proceeding. We believe that the extraordinary circumstances of this case require an application of the concept of fundamental fairness, as expressed in many appeals. [Citations.] While normally the mere passing of time will not discharge petitioner, at a certain point and after a certain number of incompleted extraditions, we must find that the State of Alabama has forfeited its right to enforce extradition." 46 Ill. 2d at 575.

The vitality of the *Bowman* holding appears dubious in view of the more recent United States Supreme Court's unequivocal pronouncements that controlling Federal law permits the courts of the asylum State to undertake only the four-part inquiry set out in *California* and *Doran* and that States may not impose additional requirements for extradition. To the extent that dilatory behavior by the demanding State may be cognizable as a violation of due process or fundamental fairness, the issue would appear to be reserved for decision by the court of the demanding State in the subsequent criminal proceeding. See *Doran*, 439 U.S. 282, 58 L. Ed. 2d 521, 99 S. Ct. 530 (court of asylum State in *habeas corpus* proceeding must respect determination of probable cause by demanding State); *Biddinger v. Commissioner of Police* (1917), 245 U.S. 128, 62 L. Ed. 193, 38 S. Ct. 41 (petitioner not allowed to introduce evidence that he did not flee demanding State until after statute of limitations ran out).

However, we need not determine whether *Bowman* is still valid law, because the facts in this case fall far short of the "extraordinary circumstances" under which Alabama was held to have forfeited its right to extradition. There, the court was faced with an unexplained delay of 13 years in which the fugitive was not in custody and thus always available for extradition, yet the demanding State simply refused to proceed. Here, there was a delay of 11 years between defendant's escape and the present proceeding by Wisconsin. However, defendant spent at least four years living in Florida under an alias, and there is nothing in the

record to indicate that Wisconsin officials were aware of his location until his arrest in Illinois early in 1982. Defendant may not, as he concedes, argue that his extradition would be fundamentally unfair owing to a delay that resulted from his own efforts at evading the authorities. *Beauchamp v. Elrod* (1985), 137 Ill. App. 3d 208.

■■ Furthermore, defendant does not contest the trial judge's finding that he spent approximately five of the six years that he was in Illinois incarcerated in Illinois prisons for crimes committed in this State. It is settled that the demanding State's right to extradition, though absolute, does not extend to the delivery of a fugitive from the time that the asylum State has commenced criminal proceedings against the fugitive through the conclusion of the sentence imposed by the asylum State. (Ill. Rev. Stat. 1987, ch. 60, par. 36; *People v. Klinger* (1925), 319 Ill. 275.) Delivery of the fugitive during this period is entirely at the discretion of the Governor of the asylum State, and the Governor's right to do so in no way involves any personal right of the fugitive. (*People ex rel. Barrett v. Bartley* (1943), 383 Ill. 437, 445; *Klinger*, 319 Ill. 275.) Unlike the State of Alabama in *Bowman*, Wisconsin did not inexplicably delay its efforts at obtaining a readily available fugitive. Rather, there is no doubt that the vast majority of the delay between the first and the last extradition proceedings was occasioned by defendant's own criminal activities in Illinois. Wisconsin is not blameworthy because Illinois declined to exercise a purely discretionary option to waive jurisdiction over defendant.

■■■ Far from approaching the "extraordinary circumstances" of *Bowman*, the facts here fit well within the established principle that a State's right to the delivery of a fugitive from justice is unaffected by the dismissal of previous extradition proceedings or by the mere passage of time. (*People ex rel. Ritholz v. Sain* (1962), 26 Ill. 2d 455, *cert. denied* (1963), 374 U.S. 807, 10 L. Ed. 2d 1031, 83 S. Ct. 1696; *Bowman*, 46 Ill. 2d at 575.) The circuit court properly denied the petition for *habeas corpus*.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

INGLIS and WOODWARD, JJ., concur.