ROBERT BEAUCHAMP, Plaintiff-Appellant, v. RICHARD ELROD, Sheriff of Cook County, Defendant-Appellee.

First District (4th Division)   No. 83—2781

Opinion filed September 26, 1985.—Rehearing denied November 1, 1985.

Steven Clark, of State Appellate Defender's Office, and Kimball R. Anderson, of Winston & Strawn, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Karen C. Wirth, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County denying plaintiff's petition for writ of *habeas corpus* and remanding him to the custody of the sheriff of Cook County for extradition to the State of Massachusetts.

Plaintiff, Robert Beauchamp, after serving a one-year sentence for mail fraud, was released by Federal officials on February 16, 1983, to the custody of Illinois officials who held him on State misdemeanor charges of "deceptive practices." On February 17, 1983, plaintiff appeared in the circuit court, where it was discovered that there was a warrant out for his arrest. The warrant indicated he had escaped from prison in Massachusetts. After learning of plaintiff's fugitive status, Illinois officials dropped the deceptive practices charges against him and initiated extradition proceedings. Plaintiff's request for bail was denied.

Beauchamp's extradition package was received by Illinois officials from Massachusetts officials and, on April 15, 1983, Governor Thompson issued his rendition warrant. Plaintiff thereafter refused to waive extradition. Plaintiff filed a State *habeas corpus* action challenging his extradition. His petition for *habeas corpus* was denied on November 10, 1983.

Plaintiff now appeals the circuit court's decision. He argues that (1) material violations of the Interstate Agreement on Detainers compel his release, (2) material violations of the Illinois Uniform Criminal Extradition Act compel his release, (3) unreasonable delay by the State of Massachusetts in extraditing him violates his due process rights, (4) he is not a fugitive, and (5) he is entitled to bail.

Other relevant facts are incorporated into the opinion.

I

Extradition is governed by the United States Constitution and by

Federal legislation. States may supplement Federal extradition regulations but they cannot impose more stringent requirements for extradition than Federal law requires. (*People ex rel. Hernandez v. Elrod* (1981), 86 Ill. 2d 453, 456, 427 N.E.2d 1209, 1210.) However, States can surrender fugitives on terms less exacting than those imposed by Federal law. (*People ex rel. Dimas v. Shimp* (1980), 83 Ill. App. 3d 150, 154, 403 N.E.2d 750, 752.) In Illinois, the Uniform Criminal Extradition Act (the Act) (Ill. Rev. Stat. 1983, ch. 60, pars. 18 through 49) governs the extradition of fugitives. Extradition proceedings are intended to be a summary and mandatory procedure for returning fugitives to the demanding State. It is not a judicial proceeding to inquire into the merits of the charge. (*People ex rel. Millet v. Babb* (1953), 1 Ill. 2d 191, 195, 115 N.E.2d 241, 243.) Because of the summary nature of extradition proceedings, the scope of inquiry surrounding extradition proceedings does not include the kind of preliminary inquiry traditionally intervening between initial arrest and trial. Thus, the scope of inquiry in *habeas corpus* proceedings to determine the validity of extradition is limited to the following areas: (1) whether the extradition documents on their face are regular in form; (2) whether the petitioner has been charged with a crime in the demanding State; (3) whether the petitioner is the person named in the request for extradition; and (4) whether the petitioner is a fugitive. *Michigan v. Doran* (1978), 439 U.S. 282, 288-89, 58 L. Ed. 2d 521, 527, 99 S. Ct. 530, 535.

Plaintiff first argues that Massachusetts officials' alleged inordinate delay in seeking his extradition violated his due process rights. The record shows the plaintiff escaped from a Massachusetts prison in 1974 while serving a life sentence for murder. After his escape, plaintiff used various aliases to evade the authorities. Massachusetts officials initially learned of plaintiff's whereabouts in 1981 when plaintiff was in California. They attempted to extradite him at that time. However, because of Federal charges pending against plaintiff, they were unable to complete extradition proceedings against him. Plaintiff was convicted of Federal income tax fraud and sentenced to nine months in prison. In March 1982, after serving his sentence for tax fraud, plaintiff was transferred to the Federal district court in Chicago to face charges of mail fraud. He was convicted of mail fraud and given a one-year sentence. On February 16, 1983, after serving his sentence for mail fraud, he was transferred from the Metropolitan Correction Center in Chicago to the Cook County jail, where he was held on Illinois misdemeanor charges of deceptive practices. On February 17, 1983, Cook County authorities discovered the plaintiff had escaped

from prison while serving a life term for murder. Because of this, Illinois officials dropped the deceptive practices charges against plaintiff and immediately began the extradition process.

■■ Extradition proceedings are intended to be a summary procedure to return the fugitive to the demanding State. The asylum forum is generally an inappropriate forum in which to raise constitutional questions that generally are appropriate only when raised as a defense to the underlying criminal charge. Such claims must be raised initially in the courts of the demanding State where an appropriate remedy can be fashioned. *United States ex rel. McInery v. Shelley* (N.D. Ill. 1981), 524 F. Supp. 499, 503.

Illinois, nevertheless, recognizes an exception to this rule. Extradition has been denied on constitutional grounds where extraordinary circumstances exist and fundamental fairness requires a finding that the demanding State forfeited its right to extradite the defendant. (*People ex rel. Bowman v. Woods* (1970), 46 Ill. 2d 572, 575, 264 N.E.2d 151, 153.) The fundamental fairness-due process issue is addressed by the court in its review of extradition proceedings where there has been an inordinate delay in the demanding State seeking extradition that is not attributed to the accused. See *People ex rel. Bowman v. Woods* (1970), 46 Ill. 2d 572, 264 N.E.2d 151; *United States ex rel. McInery v. Shelley* (N.D. Ill. 1981), 524 F. Supp. 499.

Plaintiff cites *People ex rel. Bowman v. Woods* (1970), 46 Ill. 2d 572, 264 N.E.2d 151, in support of his argument that his due process rights were violated. In *People ex rel. Bowman,* the petitioner was twice arrested in Illinois on warrants from the State of Alabama for escaping from custody on charges of stealing cows. Alabama failed to follow through on the extradition proceedings by not extraditing petitioner who was released by Illinois officials each time after Alabama failed to follow through. When petitioner was arrested in Illinois a third time on the same Alabama warrant, 13 years after the first arrest, he challenged the third extradition. The court held that because Alabama's dilatory tactics resulted in an unexplained 13-year delay between the first and last extradition proceedings, Alabama had forfeited its right to enforce extradition of Bowman. (46 Ill. 2d 572, 575, 264 N.E.2d 151.) The court reasoned that fundamental fairness-due process required the forfeiture of the right to extradite because of the extraordinary circumstances of the unexplained 13-year delay. 46 Ill. 2d 572, 575, 264 N.E.2d 151.

■ No such extraordinary circumstances exist in plaintiff's case. The 11-year delay between plaintiff's escape and the Massachusetts extradition was due primarily to his evasion of the authorities. More-

over, once Massachusetts officials learned of plaintiff's whereabouts, they began extradition proceedings and diligently followed through on those proceedings. Lastly, the interval between plaintiff's arrest in Illinois by State officials and the filing of the petition for *habeas corpus* was less than four months, a substantially shorter period than the 13-year delay in *People ex rel. Bowman.* We hold that plaintiff's due process rights were not violated.

## II

Plaintiff next contends that material violations of the Interstate Agreement on Detainers compel his release. He argues that the material violations occurred when Massachusetts officials refused to take custody of him in Los Angeles, California. There is no evidence in the record that Massachusetts officials refused to take custody of plaintiff in Los Angeles.

■ The Interstate Agreement on Detainers is a mechanism for the expeditious transfer of prisoners to the temporary custody of another jurisdiction to face untried charges. (*United States v. Mauro* (1978), 436 U.S. 340, 351, 56 L. Ed. 2d 329, 341, 98 S. Ct. 1834, 1842-43.) We need not consider plaintiff's argument that there were material violations of the Interstate Agreement on Detainers. Plaintiffs' argument alleging material violations of the Interstate Agreement on Detainers is moot. Once the Governor's warrant has been filed, as it has been in plaintiff's case, issues relating to any delay in consummating the extradition proceedings are moot. *People ex rel. Vasquez v. Pratt* (1975), 24 Ill. App. 3d 927, 931, 322 N.E.2d 74, 77.

## III

Plaintiff contends that the extradition papers are irregular and improper in form. He argues that material defects in the papers from Massachusetts officials requesting his extradition raise an inference of fraud. (*People ex rel. Dimas v. Shimp* (1980), 83 Ill. App. 3d 150, 157, 403 N.E.2d 750, 755.) In *People ex rel. Dimas*, the court held that it will not interfere with a grant of extradition unless it is " 'so palpably and conclusively shown to be wrong as to warrant an inference of fraud or inadvertence.' " 83 Ill. App. 3d 150, 157, 403 N.E.2d 750.

Plaintiff contends that the following excerpts taken from the extradition papers submitted to the Governor by Massachusetts officials to substantiate their extradition request raise an inference of fraud:

> "There has not been any former application for requisition after the same person for the offense, which is the basis of the application;" and

> "The request for the arrest of said accused has not sooner been made because the whereabouts of said accused were not sooner ascertained."

Plaintiff introduced evidence which indicated that Massachusetts officials submitted a request for his extradition from California, although it did not follow through on extradition because of Federal charges pending against plaintiff in California.

Although plaintiff's arguments and evidence presented indicate discrepancies in the extradition papers, we, nevertheless, conclude that on their face the extradition papers are proper in form. The scope of our review on this issue is restricted to ascertaining whether the extradition papers on their face are proper in form. (*Michigan v. Doran* (1978), 439 U.S. 282, 289, 58 L. Ed. 2d 521, 527, 99 S. Ct. 530, 535.) We believe that in order to consider plaintiff's arguments fully we would have to look beyond the face of the extradition papers, which we cannot do.

Nevertheless, we will examine plaintiff's argument in more detail, since case law cited by plaintiff (*People v. Evans* (1984), 126 Ill. App. 3d 812, 467 N.E.2d 631) suggests we should do so.

Pleadings requirements for extradition are not strict, and documents supporting a request for a warrant are to be considered as a whole. (*Papas v. Brown* (1980), 88 Ill. App. 3d 471, 475-76, 410 N.E.2d 568, 571.) Courts should not interfere on *habeas corpus* and discharge an accused on technical grounds unless it is clear that what was done was in plain contravention of the law. (*People ex rel. Montos v. Mulcahy* (1946), 394 Ill. 416, 419, 68 N.E.2d 738, 739; see, *e.g.*, *People v. Williams* (1979), 68 Ill. App. 3d 351, 386 N.E.2d 145.) In *People v. Williams*, Alabama officials submitted to the Governor of Illinois proper supporting papers showing that the accused had engaged in acts in Illinois that violated the terms of his Alabama probation. The court held that the fact the requisition warrant submitted by the Governor of Alabama erroneously stated that the accused committed the offending acts in Alabama, although committed in Illinois, was a mere technical defect that did not prevent extradition, and there was no danger the Governor of Illinois was misled because there was other adequate and correct information for him to make his decision. 68 Ill. App. 3d 351, 354-55, 386 N.E.2d 145.

■ Similarly, in the case at bar, the Governor had before him other adequate and correct information to ensure that he was not misled. He had statements from Massachusetts prison officials verifying that plaintiff had escaped from prison while serving a life sentence for murder, a copy of the conviction sheet, and other documents support-

ing plaintiff's extradition. Plaintiff did not challenge these documents. We hold that the defects in the extradition papers are merely technical, which do not prevent extradition of plaintiff.

## IV

Plaintiff next argues that he is not a fugitive. He states that Massachusetts prison authorities furloughed him with instructions not to return and that the Attorney General of Massachusetts suspended the remainder of his sentence. Plaintiff submitted no evidence to verify those claims.

■ The issuance of a warrant by the Governor of the State of refuge upon proper and sufficient requisition creates a *prima facie* case to justify the removal of the person charged as a fugitive. Such *prima facie* case can be overcome only by proof to the contrary. To show that he is not a fugitive from justice, the accused must demonstrate conclusively that he is not a fugitive. (*People ex rel. Lacanski v. Backes* (1960), 19 Ill. 2d 541, 545, 169 N.E.2d 80, 83.) Plaintiff's claims without any substantiating proof do not conclusively establish he is not a fugitive.

## V

Plaintiff lastly argues he is entitled to bail pending his appeal even though the Governor of Illinois has signed an extradition warrant approving his extradition. A thorough review of case law indicates that the issue of an accused's right to bail after the Governor's warrant has been issued and the accused is held solely for the purpose of extradition has not been addressed by Illinois courts.

Illinois has adopted the Uniform Criminal Extradition Act. (Ill. Rev. Stat. 1983, ch. 60, pars. 18 through 49.) There is no provision in the Act for bail after the Governor's extradition warrant has been issued. (*Meechaicum v. Fountain* (10th Cir. 1983), 696 F.2d 790, 791.) Illinois has adopted verbatim the section of the Uniform Criminal Extradition Act concerning bail. We conclude there is no section of the Illinois Uniform Criminal Extradition Act that applies to plaintiff's bail after the Governor has issued an extradition warrant.

A thorough review of case law in other States reveals that there is a minority and majority rule on this particular issue. The minority rule is that the right to bail continues even after issuance of the Governor's warrant. (See, *e.g., State ex rel. Partin v. Jensen* (1979), 203 Neb. 441, 279 N.W.2d 120; *Carino v. Watson* (1976), 171 Conn. 366, 370 A.2d 950; *Ruther v. Sweeney* (1956), 75 Ohio Abs. 385, 137 N.E.2d 292; *Application of Haney* (1955), 77 Idaho 166, 289 P.2d 945.)

These courts reached their decision by reasoning that because courts have the inherent power to set bail, the right to bail continues even after issuance of the Governor's warrant. Plaintiff urges this court to adopt the minority rule and remand this case to the circuit court for the setting of reasonable bail.

The majority of the courts that have addressed this issue have determined that, absent statutory authorization, a defendant detained by a governor's warrant has no right to bail. (See, *e.g., Deas v. Weinshienk* (1975), 188 Colo. 17, 533 P.2d 496; *State ex rel. Howard v. St. Joseph Superior Court* (1974), 262 Ind. 367, 316 N.E.2d 356; *State v. Second Judicial District Court* (1970), 86 Nev. 531, 471 P.2d 224; *In re Application of Amundson* (1945), 74 N.D. 83, 19 N.W.2d 918; *State v. Pritchett* (1975), 12 Wash. App. 673, 530 P.2d 1348; *In re Lucas* (1975), 136 N.J. Super. 24, 343 A.2d 845; *Balasco v. State* (1974), 52 Ala. App. 99, 289 So. 2d 666; *Grano v. State* (Del. Super. Ct. 1969), 257 A.2d 768; *Buchanan v. State ex rel. Weiss* (Fla. App. 1964), 166 So. 2d 596.) The rationale of these decisions is that because the fugitive is being held for another State he should be readily available to be turned over to those who arrive to return him. A presumption exists that the demanding State will accord the fugitive all his legal rights, including that of bail. *Meechaicum v. Fountain* (10th Cir. 1983), 696 F.2d 790, 792.

██ The reasoning of the majority rule, we conclude, is best suited for that of extradition proceedings. As the supreme court has stated, the asylum State is an inappropriate forum in which to raise constitutional issues. (*Sweeney v. Woodall* (1953), 344 U.S. 86, 89-90, 97 L. Ed. 114, 118, 73 S. Ct. 139, 140-41.) Furthermore, it is more appropriate that the accused's right to bail be tested by the laws of the demanding State where he is charged with a crime, and not by the State which holds him solely for the purpose of rendition. (*State v. Second Judicial District Court* (1970), 86 Nev. 531, 538, 471 P.2d 224, 227.) We hold that where a governor's warrant has been issued and where plaintiff is held solely for the purpose of extradition, as in this case, he has no right to bail.

For the foregoing reasons, the decision of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.